UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

    James Allen Debaeke and                               Case No. 10-42863
    Teresa Debaeke,                                            Chapter 7
                                                                              Hon. Walter Shapero
        Debtors.

_____/

Janet Higbie,

    Plaintiff,

v.                                                                                    Adv. Pro. No. 10-05355

James Allen Debaeke,

    Defendant.

_____/

**OPINION ON COMPLAINT TO FIND CONVERSION AND TO
DECLARE DEBT NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(a)(6)**

Janet Higbie ("Plaintiff") commenced this adversary proceeding seeking (1) a finding that James Debaeke ("Defendant") converted a 2005 Nervo-Coggins Predator Mini Cup Racer ("go-cart"), and (2) a declaration that the damages resulting from that conversion are non-dischargeable under 11 U.S.C. § 523(a)(6).[1] Defendant denies that he converted the go-cart, indicating that it was collateral for a $1,000 loan he gave to Plaintiff in November 2008. Defendant filed a counter-complaint, alleging defamation and extortion. In her answer to Defendant's counter-complaint, Plaintiff denied that the $1,000 transfer from Defendant to her was a loan, denied that Defendant had any security interest in the go-cart, and denied the

---

[1] Apparently based on a misconception that the go-cart had been sold by Defendant, the complaint sought a finding of non-dischargeability for the value of the go-cart, plus other damages, under 11 U.S.C. § 523(a)(4). Upon learning that Defendant had not sold the go-cart, the Plaintiff proceeded under both 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6), but never formally amended the complaint. The Plaintiff has essentially abandoned the § 523(a)(4) argument, relying solely on the § 523(a)(6) argument at trial. Defendant has not objected to Plaintiff's failure to amend the complaint to include the § 523(a)(6) argument. As such, the Court is considering the complaint to be in effect amended and will proceed on that basis.

1

defamation and extortion allegations. After denying Plaintiff's Motion for Summary Judgment, the matter proceeded to trial. Defendant withdrew the counter-claims alleging defamation and extortion at trial, and the remaining disputed issues were (1) whether Defendant converted the go-cart, and (2) whether Defendant's liability, if any, was dischargeable.

## I. BACKGROUND AND FACTS

In late 2006, Plaintiff's then five-year-old son, Douglas, became interested in mini cup racing. Plaintiff and her then husband purchased the go-cart at issue for $3,500. The mini cup racing season usually runs from April until October. Douglas raced during the 2007 and 2008 seasons and he apparently did quite well. Plaintiff, her then husband, and Douglas necessarily became involved with others involved in the sport, including Defendant and his wife. Beginning in 2006, Plaintiff and her then husband were having marital problems and they eventually separated in 2007. Among other things, their separation occasioned financial difficulties for Plaintiff, who is a pharmacy technician and who, at that time, was living in Mason, Michigan and working at the Ionia prison facility. At some point, due to her living and financial situation, she and Defendant apparently agreed that the go-cart would be stored at Defendant's home (or another place owned by him), and Plaintiff would take it to and from that location during the race season on the days Douglas participated in races. Sometime in late 2008 or early 2009, Plaintiff's financial situation deteriorated to the point that she was starting to get behind in her rent payments. She discussed the matter with Defendant and his wife (who worked as an accountant or financial officer) to see what might be done to alleviate or deal with her financial situation. Apparently, Defendant and his wife asked her to bring her financial papers, a credit report, and her pay stubs for them to review. Her rent at the time was $817 per month and she was one month behind. After that discussion, Defendant apparently offered her $1,000 in cash. At some later date, without his wife being present, Defendant gave Plaintiff $1,000, which she used primarily to pay rent. Plaintiff testified that there was no discussion at that time regarding whether or not the money was to be considered a loan.

Also around the same time, the go-cart needed some repairs, which Plaintiff was having difficulty paying for. Defendant would apparently indicate when the go-cart needed repairs and parts and Plaintiff would either purchase those parts herself, or Defendant would purchase them and Plaintiff would reimburse him. Defendant apparently made the repairs either by himself, or

with Douglas, and he did not charge for his labor, which was apparently a common service he provided for others involved in the mini cup sport. Defendant was also active in a veteran's organization and, in November 2008, he arranged for Plaintiff to do some painting at a related facility for some extra money. He apparently paid her between $380 and $400 for that work. In the spring of 2009, Plaintiff applied for a job opening at the Jackson prison. Believing that she would get that job, she began searching for housing in the Jackson area. Defendant and his wife owned a duplex unit in Jackson and they agreed to rent that property to Plaintiff for $600 per month and Plaintiff signed a one-year lease and moved into that property, apparently before actually being offered the job at the Jackson prison. She commuted from Jackson to her job in Ionia. Unfortunately, Plaintiff was not offered the Jackson prison job, so, after four or so months living at the duplex, she moved out and relocated to Mason. After Plaintiff moved out of the duplex, Defendant gave her an invoice, or a similar document, stating that she owed him money for (1) unpaid rent and other charges for breaking her lease, (2) go-cart parts, and (3) repayment of a $1,000 "loan," and also giving her a credit for some work she had done for which she had not yet been paid. Plaintiff testified that this invoice was the first mention of the $1,000 as having been a "loan." Defendant initiated an action in the District Court for the claimed unpaid duplex rent and for a carpet cleaning bill of some $90, which was ultimately settled by way of Plaintiff paying some $250 to Defendant. As a result of that lawsuit, and possibly for other reasons, the relationship between Plaintiff and Defendant deteriorated. Sometime in August 2009, that deterioration culminated when Plaintiff was called to Defendant's property because Douglas had locked himself in her ex-husband's car as a result of some argument between Defendant and Douglas. Plaintiff apparently attempted to retrieve possession of the go-cart with the help of an on-duty Michigan State Trooper. Defendant refused to surrender the go-cart, alleging that he had a security interest in the go-cart and that the go-cart was collateral for the $1,000 "loan" he gave to Plaintiff. After being unsuccessful in her attempt to obtain the go-cart, Plaintiff commenced a state court proceeding to obtain it, or its claimed value in damages. She received a default judgment for some $10,400 in that case, which was eventually set aside. Soon thereafter, on February 2, 2010, Defendant and his wife filed their Chapter 7 bankruptcy petition, following which, Plaintiff commenced this adversary proceeding.

## II. **DISCUSSION**

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "An act of conversion may constitute willful and malicious injury depending on whether or not the debtor intended to cause the harm or was substantially certain that such harm would occur." *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

A. Conversion

There are several issues that must be addressed in determining whether Defendant converted the go-cart.

The first issue is whether or not the $1,000 payment to Plaintiff was a loan. The Plaintiff argues that the $1,000 was not intended to be a loan at the time the transfer was made and that it was essentially an action of friendship and was never referred to as a loan until after the relationship between her and the Defendant soured. The Defendant argues that the $1,000 transfer was considered to be a loan at all relevant times and, in support of that argument, he relies mainly on the fact that he and his wife reviewed Plaintiff's financial information prior to giving her the $1,000. He also argues that Plaintiff paid him $75, which was a payment on the alleged loan. The Court believes Plaintiff's credible testimony regarding the circumstances surrounding the $1,000 payment and finds that the payment was simply a gesture of friendship, with nothing more than possibly a moral, but not legal, obligation to repay it. The fact that the Defendant and his wife reviewed Plaintiff's financial information in this case does not necessarily evidence a loan, and such is better explained by the context of the circumstances whereby Plaintiff allowed Defendant and his wife to review that information in an attempt to get their help with creating a budget and getting advise as to how to deal with her adverse financial circumstances. Further, with regard to the $75 payment made by Plaintiff to Defendant, there was no evidence that said payment was in relation to the alleged loan, as opposed to a payment for replacement parts Defendant may have purchased for the go-cart. The Court further concludes that the Defendant's claim that the $1,000 payment was a loan was in reality more of an afterthought arising after the souring of the relationship between the parties.

The next issue is whether or not Defendant was entitled to retain possession of the go-cart on the basis that it was collateral for the $1,000 payment. Michigan's version of Article 9 of the Uniform Commercial Code governs secured transactions. *See, e.g.*, Mich. Comp. Laws §§ 440.9101 – 9994. A "security agreement" is defined as "an agreement that creates or provides

4

for a security interest." *Id*. § 440.9102(1)(ttt). A "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." *Id*. § 440.9201(37). A security interest is enforceable against the debtor with respect to the collateral only if all of the following are met: (1) the secured party must have given value; (2) the debtor must have "rights in the collateral or the power to transfer rights in the collateral to the secured party;" and (3) as relevant to the Defendant's alleged security interest, the "collateral . . . is in the possession of the secured party under section 9313 pursuant to the debtor's security agreement." *Id*. § 440.9203(2). As indicated above, based on the testimony and evidence before the Court, the Court finds that the transfer of the $1,000 to Plaintiff was not a loan. As it would logically follow, the Court also finds that there was not a present intent on the part of the parties to create a security interest in the go-cart at the time the $1,000 payment was made or at any time thereafter. As previously noted, prior to the $1,000 payment, the go-cart was already in the Defendant's possession for some time. His possession of the go-cart is not necessarily indicative of a security interest in the go-cart. Therefore, the Court finds that Defendant did not, and does not, have a valid security interest in the go-cart.

The next issue is whether Defendant's withholding of the go-cart from Plaintiff constitutes a conversion. "[C]onversion is defined as any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Morganroth v. Morganroth, PLLC v. Stollman (In re Stollman)*, 404 B.R. 244, 263 (Bankr. E.D. Mich. 2009), quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 486 N.W.2d 600, 606 (1992). The Michigan Supreme Court has held that the tort of conversion does not require an intent to violate the property rights of another, or knowledge that one is violating the property rights of another. "In general, [conversion] is viewed as an intentional tort in the sense that the converter's actions are willful, although the tort can be committed unwillingly if unaware of the plaintiff's outstanding property interest." *Foremost Ins. Co.*, 486 N.W.2d at 606 (footnote and citations omitted). The Court concludes that Defendant is liable for conversion under the Michigan conversion statute, Mich. Comp. Laws § 600.2919a(1)(a). While perhaps not knowingly or intentionally (as will be discussed below), Defendant clearly wrongfully exerted domain over Plaintiff's go-cart, contrary to her rights therein, when he denied Plaintiff the right to retrieve the go-cart from his property and when he permitted others to drive the go-cart without Plaintiff's permission.

5

### B. 11 U.S.C. § 523(a)(6)

11 U.S.C. § 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The elements of nondischargeability under §523(a)(6) are (1) desire to cause the consequences of the act or belief that the consequences are substantially certain to result; and (2) no just cause or excuse. *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 580 (6th Cir. 2001) (citations omitted).

Nondischargeability under § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998). "[U]nless 'the actor desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th 1999) (*quoting* Restatement (Second) of Torts § 8A, at 15 (1964)). The second component of § 523(a)(6), that the injury be malicious, "means in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986).

Plaintiff argues that Defendant's conversion of her go-cart constitutes a willful and malicious injury and she seeks non-dischargeability of the debts owed to her by Defendant resulting from said conversion. In this case, as noted, the Court concludes that Defendant converted the go-cart when he withheld it from Plaintiff. However, in order for an act of conversion to constitute a willful and malicious injury under § 523(a)(6), the Defendant must have "intended to cause the harm" or must have been "substantially certain that such harm would occur." *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001). Despite the fact that the Court has concluded that Defendant did not have a security interest in the go-cart, the Court finds that Defendant believed, albeit mistakenly, that he had the right to retain possession of the go-cart. As noted, Defendant regularly bought parts for the go-cart and made repairs to the go-cart. In addition to his mistaken belief that he had the right to retain the go-cart under a security interest theory, it is clear that Defendant also believed he had the right to withhold the vehicle on the basis of a lien for materials provided and work done on the go-cart for which he had not been paid. Therefore, based on the evidence before the Court and

6

Defendant's credible testimony, the Court finds that the Plaintiff has not shown the requisite "intent to cause the harm" or that Defendant acted "willfully" or "maliciously" when he withheld the go-cart. Accordingly, the Court concludes that the debt owed by Defendant to Plaintiff is dischargeable.

C. Damages

Michigan's conversion statute provides, in part, that a person damaged as a result of another person's converting property to the other person's own use may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees. Mich. Comp. Laws. § 600.2919a(1)(a). Plaintiff is seeking damages for Defendant's withholding possession of the go-cart, which she argues should be trebled, and attorney fees. She seeks actual damages in the amount of $20 per day for a period beginning at the end of July 2009 and ending as of the date of the trial (some 645 days), which would total some $12,900 or $38,700 once trebled. Apparently, the go-cart remained in the Defendant's possession at least up until the date of the trial and it may still be in his custody. Defendant argues that, even if Plaintiff is entitled to some amount of actual damages, the Court should only consider the race days within the stated time period. The number of "race days" within that 645-day period is not in evidence, but considering the facts that the "racing season" is between April and October and that it is unlikely that Plaintiff's son would have raced every weekend during that period, it is clear that if the Court agreed with Defendant's calculation, the amount of damages would be significantly less than Plaintiff argues for.

Plaintiff also argues that Defendant allowed the go-cart to fall into disrepair while it was in his position and that it is in much poorer shape than it was at the time he began withholding its possession. There is no credible, specific evidence as to the state of the go-cart at the time Defendant began withholding possession of the go-cart as compared with the results of the more current inspection hereinafter referred to. The Court ordered an inspection of the go-cart prior to the continued trial date and that inspection was made by a Tim Phillips, who promotes mini-cup racing and deals in the repairs of the mini cup go-carts. He did not inspect the go-cart before the time Defendant began withholding it from Plaintiff and he had no idea of its condition at that time. He testified that the go-cart is currently in good racing condition, unless it is to be run in certain types of "Series" races, which require that the go-carts meet uniform standards and be sealed, i.e.: have a seal put on the engine to show that it meets required standards and to preclude

tampering with the engine. He further testified that the go-cart could use certain other repairs, including mending a bend and crack in the go-cart's mount. Based on Mr. Phillips' testimony and the fact there is insufficient evidence in the record as to the go-cart's condition at the time it entered Defendant's possession, it is unclear whether there was any damage done to the go-cart while it was in Defendant's possession. At some point, while the go-cart was in Defendant's possession, he changed the seat from a child seat to an adult seat and changed the motor to a "Chinese" motor.

In this case, it is clear that the go-cart should be returned to Plaintiff. It is also clear that (1) Plaintiff suffered some amount of damages for the days Defendant withheld possession of the go-cart and (2) Defendant has made some improvements to the vehicle for which he might be entitled to some monetary recompense. The Court is inclined to agree with Defendant's calculation regarding Plaintiff's actual damages resulting from the conversion, but taking into consideration only race days when calculating the damages. The appropriate and required outcome in this case, and the one which takes into account all relevant facts, would be, and is herein declared to be, that (a) Defendant shall return the go-cart to the Plaintiff, and (b) given the lack of evidence with regard to the "race days" and the lack of sufficiently specific evidence regarding any improvements Defendant may have made to the go-cart while it was in his possession and their value, and also considering the fact that the Court has concluded that the debt is dischargeable in Defendant's bankruptcy case, the Court concludes that any damages accruing to each of the parties would be substantially equal and thus in essence cancel each other out. It necessarily also follows given that result that the Court will not award any attorney fees.

Plaintiff's attorney shall prepare and present an appropriate order.

.

**Signed on November 07, 2011**
                                                                      /s/ Walter Shapero
**Walter Shapero**
**United States Bankruptcy Judge**